IN THE OREGON TAX COURT

D. R. JOHNSON LUMBER COMPANY,
dba Prairie Wood Products,
and Strawberry Mountain Power Company,
an Oregon corporation,
and The Jody Johnson Trust,
an Oregon Partnership,
dba Co-Gen Company and Co-Gen II,

*v.*

DEPARTMENT OF REVENUE

(TC 3237)

Donald A. Dole, Dole, Coalwell, Clark & White, P.C., Roseburg, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered May 3, 1993.

## CARL N. BYERS, Judge.

This case involves two partnerships, each owning and operating an electric power generating facility.[1] Co-Gen Company is a partnership consisting of D. R. Johnson Lumber Company, dba Prairie Wood Products, and Strawberry Mountain Power Company. It owns a facility near Prairie City in Grant County. Co-Gen II is a partnership consisting of D. R. Johnson Lumber Company, Riddle Power Company and the Jody Johnson Trust. It owns a facility near Riddle in Douglas County. Each facility is designed to produce 7.5 megawatts of electric power. Each facility uses wood waste, commonly called "hog fuel," from the adjacent lumber mills, both of which are owned or controlled by the D. R. Johnson family. The facilities also buy hog fuel from other lumber mills owned by unrelated parties.

The hog fuel is used to fire steam-producing boilers. Approximately 25 to 35 percent of the steam is used in the dry kilns at the adjacent lumber mills. All of the remaining steam is used to produce electricity. All of the electricity, except that used to operate the power plants, is sold to power companies. Any electricity required by the lumber mills is purchased separately from the power companies.[2]

In 1988, each plaintiff filed an election to have its electric power generating plants valued under ORS 308.411. ORS 308.408 through ORS 308.413 are provisions designed to allow the owners of industrial plants to keep operating income and expense information confidential. To do this, the owner must:

> "[E]lect to have the plant appraised and valued for ad valorem tax purposes excluding the income approach to valuation and excluding taking into consideration functional and economic obsolescence in the utilization of any approach to valuation." ORS 308.411(2).[3]

---

[1] The Complaint and Answer treat plaintiffs as a single partnership but the evidence indicates there are two partnerships with some common members, all controlled by the D. R. Johnson family.

[2] This arrangement apparently allows plaintiffs to obtain the maximum price for electricity sold to power companies. It results from the Public Utility Regulatory Policies Act of 1978 (PURPA).

[3] All citations to Oregon Revised Statutes are to the 1987 Replacement Part.

Defendant denied plaintiffs' attempted election and assessed plaintiffs under ORS 308.505 through ORS 308.665. The focal statute, ORS 308.515(1)(a), provides:

"The Department of Revenue shall make an annual assessment, upon an assessment roll to be prepared by the division of the department charged with property tax administration, of the following property having a situs in this state:

"(a) Except as provided in subsection (2) of this section, any property used or held for its own future use by any company in performing or maintaining any of the following businesses or services or in selling any of the following commodities, whether in domestic or interstate commerce or both, and whether mutually, or for hire, sale or consumption by other persons: * * * electricity; * * *."

## ISSUES

The facts raise two issues:

(1) Are plaintiffs' electric power generating facilities properly designated for central assessment?

(2) If so, may a company assessable under ORS 308.505 *et seq* elect to be taxed under ORS 308.411?

## CENTRAL ASSESSMENT OF PROPERTY

ORS 308.510 defines property broadly, including all property "used" in the sale of the commodities set forth in ORS 308.515. Since the subject properties are used to produce and sell electricity, they are subject to assessment and taxation under ORS 308.515. Plaintiffs introduced evidence to show that the partnerships and D. R. Johnson Lumber Company do not deal with each other at arm's length but as family-controlled conglomerates. That is of no significance. ORS 308.505 defines "company" broadly enough to treat subsidiary and parent corporations as one company. *Southern Pacific Trans. Co. v. Dept. of Rev.*, 295 Or 47, 664 P2d 401 (1983).

Whether plaintiffs are viewed as a conglomerate company or as separate companies makes no difference. The properties are used to generate electricity which is sold. Those are the salient facts which bring the properties within

the jurisdiction of the department to designate them for central assessment.

The statutory scheme is not without exceptions or exclusions. For example, ORS 308.515(5) provides:

> "Any company which generates electricity primarily for its own use, but which makes incidental sales of its surplus electricity, is not an electric company under subsection (1) of this section."

This subsection does not apply to the facts here. Although D. R. Johnson Lumber Company uses steam produced by the facilities, it does not use the electricity. The electricity generated is not "primarily" for use by either D. R. Johnson Lumber Company or plaintiffs. Except for the parasite power used to operate the power plant, plaintiff sells all the electricity it produces.

Another possible exception is ORS 308.510(5) which provides:

> "Property found by the department to have an integrated use for or in more than one business, service or sale, where at least one such business, service or sale is one enumerated in ORS 308.515, shall be classified by the department as being within or without the definition of property under subsection (1) of this section, according to the primary use of such property as determined by the department."

■ Plaintiffs argue that their electric generating facilities are an integrated part of the larger industrial complexes with which they are associated. They claim that the "facilities are just one part of a multiphase operation * * *." However, as previously noted, the facilities are separate legal entities. For example, both facilities purchased their land from their respective lumber mills. The court finds that Co-Gen and Co-Gen II are not an integrated part of the larger industrial complexes.

Additionally, plaintiffs argue that the primary purpose of the facilities is to generate steam for the lumber mill dry kilns.

The evidence established that the first priority for the use of steam was for the lumber mill dry kilns. Steam is used to generate electricity only after all of the lumber mill requirements for steam are met.

■      Notwithstanding the priorities for use, the court finds that the primary *use* of plaintiffs' electric power generating facilities is to produce electricity. There can be no doubt that the sole purpose of the electric generators and other associated equipment is to produce electricity. Although the first priority of the boiler and associated parts is to make steam for the lumber mill, the primary "use" of such property is to produce electricity. "Primary use" in this context refers to the chief or principal use. *See Ind. Refrigeration v. Tax Com.*, 242 Or 217, 220-21, 408 P2d 937 (1965). Since the chief or principal use is to produce electricity, the court cannot find the department erred in determining that plaintiffs are companies whose electric powered generating facilities are subject to central assessment.

## ELECTION UNDER ORS 308.411

Based on the common meanings of the words used in ORS 308.411 and ORS 308.505, some properties would appear to come within both statutes. For example, railroads have long been viewed as industrial property. Plaintiffs contend that even if their power plants are subject to central assessment, they are still entitled to the election under ORS 308.411. However, there are significant differences between the statutes which make their mutual application to the same property unacceptable.

ORS 308.411 taxes only tangible property while ORS 308.510 taxes intangible property as well. ORS 308.411 establishes a special value[4] while ORS 308.515 assesses at true cash value. ORS 308.411 requires the "owner" to elect while ORS 308.510 makes the "user" of the property liable. ORS 308.411 focuses on the industrial plant while ORS 308.515 focuses on the services provided.

In addition, the procedural approaches under the statutes are inconsistent. ORS 308.411 provides for locally assessed property. The records for locally assessed property, whether appraised by the assessor or the department, are kept at the local level. In contrast, ORS 308.515 provides for central assessment by the department. Central assessment records are kept at the state level. ORS 308.560. Likewise,

---

[4] *See J. R. Simplot Co. v. Dept. of Rev.*, 12 OTR 391, 393-94 (1993), for a discussion of "elected value."

ORS 308.411 contemplates appeals to the local board of equalization while ORS 308.595(3) provides for appeals directly to the department.

If an ORS 308.515 company were allowed to make an ORS 308.411 election, it would be entitled to withhold its income and expense information as confidential. However, since many companies under ORS 308.515 are regulated, they are required to furnish the same information to the Public Utility Commission and various federal agencies. As to these companies, the election would produce an absurd result. In addition, ORS 308.520 and ORS 308.525(13) require a statement of the gross and net earnings to be filed with the department. This is incongruous with the purpose of ORS 308.411(8).

An election would prohibit the department from using an income approach, which is inconsistent with taxing an ORS 308.515 company on both its intangible and tangible property. This would leave the department with no basis for determining the value of intangible property such as power contracts. In essence, the election would be inconsistent with the statutory direction to tax certain intangible property of a company falling under ORS 308.515.

Another inconsistency lies in the scope of the election. ORS 308.411 allows the owner to make the election with regard to the value of an industrial plant. However, ORS 308.515 values the entire unit of property used by a company in providing a service. Allowing a company to make the election could result in an industrial plant being valued under a different standard than the rest of the operating unit.

Finally, the election by an owner under ORS 308.411 is inconsistent with the taxation of property to the user under ORS 308.515. The information required by ORS 308.525 for a company may not be the information of the "owner" but the information of the "user." Hence, an election by an "owner" under ORS 308.411 may not protect any information relative to the income and expenses of the property itself.

■ After comparing the features of the two statutes, the court concludes they cannot be reconciled. The numerous inconsistencies set forth above compel the conclusion that the legislature did not intend for a company taxable under ORS

308.505 to be able to make the election under ORS 308.411. The conflicts and potential for confusion are simply too great.

In summary, the court finds that plaintiffs' electric generating facilities are properly designated for central assessment under ORS 308.505. As such, the owners of such facilities are not entitled to make the election under ORS 308.411. Judgment will be entered sustaining defendant's Opinion and Order No. 88-0684. Costs to defendant.